[Civ. No. 38360. First Dist., Div. Four. Oct. 29, 1976.]

PHILLIP D. HULSE, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD,
CONTRA COSTA COUNTY et al., Respondents.

**COUNSEL**

Maurice S. Marcus and Richard A. Hellesto for Petitioner.

Charles L. Swezey, Philip M. Miyamoto, Thomas J. McBirnie, T. Groezinger, James J. Vonk, George S. Bjornsen, Robert A. La Porta and Frank Evans for Respondents.

**OPINION**

**RATTIGAN, Acting P. J.**—In proceedings regularly conducted upon his application for benefits pursuant to the workers' compensation law,

P. illip Hulse (hereinafter "applicant") was granted an award which, ar iong other things, entitled him to receive weekly permanent disability payments over a period of eight years. He petitioned respondent Workers' Compensation Appeals Board for "commutation," or lump sum payment, of the permanent disability award pursuant to Labor Code section 5100, subdivisions (a) and (b).[1] The stated purpose of the commutation, as proposed, was to protect him against inflation by providing for deposit of the commuted lump sum in an income-producing investment with a financial institution.

A board referee denied the petition, and the board denied applicant's petition for reconsideration. We granted review for the purpose of examining his contention that the board abused its discretion by denying commutation in light of the statute, the relief sought in terms of a "hedge against inflation," and the circumstances made to appear.

Applicant was injured in the course of his employment in 1973. Subsequent proceedings before the board resulted in an award ("Findings and Award") made on April 14, 1975. The award granted him "permanent disability indemnity at the rate of $70.00 per week commencing April 24, 1974 and continuing until 413.25 weekly payments shall have been made in the total amount of $28,927.50" and a life pension, payable thereafter, of $22.62 per week. It also commuted, from the "far end" of the $28,927.50, the sum of $2,000 to pay his attorney's fees as fixed by the board in that amount.[2]

On August 5, 1975, applicant filed a petition for total commutation of the then-unpaid balance of the net permanent disability award, exclusive of the life pension. The petition was opposed by respondent insurer,

---

[1]Unless otherwise expressly indicated, statutory references herein are to the Labor Code. Section 5100 provides in pertinent part:

"5100. At the time of making its award, or at any time thereafter, the appeals board, on its own motion either upon notice, or upon application of either party with due notice to the other, may commute the compensation payable under this division to a lump sum and order it to be paid forthwith or at some future time if any of the following conditions appear:

"(a) That such commutation is necessary for the protection of the person entitled thereto, or for the best interest of either party.

"(b) That commutation will avoid inequity and will not cause undue expense or hardship to either party. . . ."

[2]Such "far end" commutation of a permanent disability award is commonly ordered to permit the immediate payment of attorney's fees. (See Cal. Workmen's Compensation Practice (Cont.Ed.Bar 1973) § 12.27, p. 424.) The practice, and its employment here, have *no bearing* upon the further commutation subsequently sought in this case.

which is the carrier obligated to pay the award. At a subsequent hearing upon the petition before a board referee, applicant amended it to state the ground and terms of the proposed commutation in the following language:

"COMES NOW the applicant herein and Petitions for Commutation of the remaining portion unpaid of the permanent disability of 74%, excluding the life pension as awarded applicant by the Findings & Award of April 14, 1975.

"1. That Applicant requests that the monies remaining aforesaid be commuted and ordered paid to the Contra Costa County Employees' Credit Union . . . to be deposited therein and not to be withdrawn therefrom . . . without special order from the Worker's Compensation Appeals Board . . . if it is felt by the . . . Board that such withdrawal is in the best interest of Applicant.

"2. That by permitting this commutation, Applicant will earn interest presently being paid at the rate of 6¼% per annum which will tend to off-set the depreciation which is occurring in the purchase value of the monies awarded to applicant as he periodically receives the same because of the inflationary process now going on in the State of California and the United States of America."[3]

No testimony was received at the hearing, but applicant made an offer of proof. The facts offered, which may be accepted as true for the limited purposes of this review, are recorded in the minutes of the hearing as follows: ". . . [Applicant] . . . has adequate income from outside sources *without need to resort to the award of permanent disability* to sustain his needs. His income is $905.00 a month from other sources and his wife has an income of approximately $1,400.00 a month. The only members of his household are himself and his wife. They own their residence and have no major outstanding indebtedness." (Italics added.) The referee

---

[3]The following observations are pertinent at this point: (1) The actual amount of the lump sum to be paid out, upon commutation of a permanent disability award, is calculated at a discount by acturial application of a 3 percent per annum interest factor as prescribed in section 5101, subdivision (b). (See Cal. Workmen's Compensation Practice, *op. cit. supra*, § 12.33, pp. 427-428.) (2) The board's continuing control of the commuted amount, through the device of a so-called "blocked account" as proposed in paragraph 1 of applicant's petition, is authorized in principle by sections 5102, 5103 and 5104. (See *op. cit.*, § 12.35, pp. 429-430.) We note, in passing, that the statute which provides that a commuted lump sum may be "deposited . . . in trust" does not include a "credit union" among the permissible depositories. (See § 5102; compare § 4651.)

also received evidence of the financial return to be anticipated from the lump-sum deposit proposed in the petition.[4]

The referee denied the petition for reasons which he stated in a report made to the board upon applicant's petition for reconsideration. A majority of the three-member board panel (see § 115) denied reconsideration, stating in the order of denial that they took this action "for the reasons stated in said report which . . . [the majority] . . . hereby adopt and incorporate." The third member dissented in a separate opinion. We thereupon granted applicant's petition for review, upon which the board and the insurer appear as respondents.

■ As used in sections 5100 and 5102 (see fns. 1 and 3, *ante*), the word " 'may' is permissive." (§ 15.) Whether to order commutation in the present case, and whether to order the commuted lump sum deposited subject to the board's continuing control, therefore rested within the board's discretion. (*Jenkins* v. *Workers' Comp. Appeals Bd.* (1975) 48 Cal.App.3d 570, 573 [121 Cal.Rptr. 812].) Its discretion may not be exercised arbitrarily, however (*ibid.*), and its arbitrary denial of a petition for commutation is subject to judicial annulment as "unreasonable." (§ 5952, subd. (c); *City of Los Angeles* v. *Industrial Acc. Com.* (1965) 63 Cal.2d 263, 264, fn. 1 [46 Cal.Rptr. 110, 404 P.2d 814]; *Jenkins* v. *Workers' Comp. Appeals Bd., supra,* at pp. 573-574.) Applicant claims this result here upon the grounds that the proposed commutation scheme is in fact "necessary" for his "protection," and in his "best interest," within the meaning of section 5100. (See fn. 1, *ante.*)

The reported commutation decisions of the board and of the Industrial Accident Commission (its predecessor, hereinafter "Commission") are few in number. Judicial precedent on the subject is virtually nonexistent. The substance of the present commutation statutes (§§ 5100-5104) appeared in the workers' compensation law when it was first enacted and has not been materially changed since. (See Stats. 1913, ch. 176 [p. 279], § 33, pp. 296-297; Stats. 1917, ch. 586 [p. 831], § 28, pp. 856-857. See also Stats. 1937, ch. 90 [p. 185], pp. 290-291 [codifying the earlier commuta-

---

[4]The evidence was a letter, written by an officer of the credit union identified in paragraph 1 of the petition for commutation, to the following effects. As of August 1975, the institution was currently making a "quarterly . . . payment" on deposits at the annual rate of 6¼ percent per annum (which, for present purposes, is the apparent equivalent of 6¼ percent annual interest compounded quarterly). The rate "could increase or decrease from quarter to quarter in the years ahead" but, if it were to remain stable for "the next eight years," an untouched deposit of $18,000 would earn in excess of $11,000 during that period.

tion provisions at their present location in the Labor Code].) The Commission stated at a very early date that, notwithstanding its view that the commutation-discount factor (see present § 5101) "affords a fair remuneration to the insurance carrier for the advance payment, . . . this Commission regards the authority vested in it to compel lump sum payments as one to be exercised with great care and discretion and only in cases of very great urgency." (*Wilson* v. *Gallegher* (1914) 1 I.A.C., Pt. II, 306, 308.)

The Commission and the board have since applied this policy to the point that a leading current author states that "commutation will not be granted without a showing of an immediate and necessary requirement of funds in excess of the installment payments," such as a need to pay pressing or emergency debts. (1 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed., rev. 1976) § 6.02[4].)

With the board's general policy in mind, we turn to the reasons adopted by the majority members in denying reconsideration here. One of the reasons (which we quote, with the others, from the referee's report from which all were adopted and incorporated) was stated as follows: "We do not agree that it is good cause to commute merely for the purpose of assuring that the award of permanent disability vests as opposed to being contingent upon continued life through the period of payments prescribed by the award. (Lab. Code, § 4700.)"

This statement reflects one of respondent insurer's motives for opposing commutation, which would operate to deny it the "windfall" it would receive, upon the termination of benefits, if applicant died within the eight-year benefit period of the award. (See § 4700; Cal. Workmen's Compensation Practice, *op. cit. supra,* §§ 12.28 [p. 424], 12.33 [p. 428].) ■ However, while it is true that the "vesting" effect of commutation does not in itself constitute "good cause" therefor, it does not warrant *denial* where the commutation sought meets the standards prescribed in subdivisions (a) or (b) of section 5100. (See fn. 1, *ante*; Cal. Workmen's Compensation Practice, *supra,* § 12.33, p. 428.)

Another reason for the Board majority's denial of reconsideration was that the commutation sought by applicant would expose respondent insurer to "inequity," or "undue expense or hardship," in contravention of section 5100, subdivision (b). (See fn. 1, *ante.*) The insurer did not contest applicant's petition for this reason (or at all), and no evidence in the record supports it. ■ Moreover, the section which requires

semimonthly payment of permanent disability benefits appears to contemplate commuted, lump-sum payment as a permissible departure from the semimonthly schedule "otherwise ordered" by the Board. (§ 4651.)[5]

As the majority's reason was fully stated by the referee, however, it rested upon the express premise that granting applicant's petition would mean that *"every* award . . . should be commuted in the prospect of continuing inflation." (Italics added.) This wholesale result, it was indicated, would visit "inequity," or "undue expense or hardship," upon *all* workers' compensation insurers because it would upset the "underwriting" bases upon which the periodic-payment scheme of semimonthly permanent disability benefits is "presumably" formulated and scheduled in section 4651. (See fn. 5, *ante.*) Pursuing the same theme, respondents argue that commutation *in every case*—for which this one would serve as commanding precedent—would subject all insurers to "inequity," or "undue expense or hardship," because it would diminish their investment income. (See Cal. Workmen's Compensation Practice, *op. cit. supra,* § 12.28, p. 424.) The inevitable consequence, it is urged, will be that the cost of their insurance will increase at the expense of employers and the consuming public.

The final reason for the majority's action was that "[t]here is no intention expressed in the statute to allow commutation in order to offset inflation." Although this is literally true of "the statute" (§ 5100, subds. (a) and (b), quoted in fn. 1, *ante*), applicant makes the plausible argument that the income-producing potential of the commuted investment proposed (see fn. 4, *ante*) would afford him a substantial degree of "protection" against the likely effect of current and future inflation upon the uncommuted award,[6] and that granting his petition would thereby serve the separate—but corollary—purpose of his "best interest," within the meaning of the statute.

As appellant additionally argues, section 5100 appears in division 4 of the Labor Code. It is accordingly subject to the legislative policy

---

[5]Section 4651 provides in pertinent part that "permanent or temporary disability payments shall . . . be made not less frequently than twice in each calendar month, *unless otherwise ordered by the appeals board.*" (Italics added.)

[6]The fact of current inflationary trends in the economy, and their predictable effect upon the real value of the uncommuted payments to be received by applicant over the eight-year period of his award, have not been disputed at any point in this proceeding. They are obviously realities, and could be judicially noticed if necessary. (Evid. Code, § 452, subds. (g), (h); Witkin, Cal. Evidence (2d ed. 1966) § 175, p. 161.)

which requires that the provisions of that division "shall be *liberally construed* by the courts with the purpose of extending their benefits for the *protection* of persons injured in the course of their employment." (§ 3202 [italics added].) The mandate applies to the construction of the statute by the board as well as "by the courts." (*Jenkins* v. *Workers' Comp. Appeals Bd., supra,* 48 Cal.App.3d 570 at p. 574, fn. 2.) It thus appears that, under a liberal construction of section 5100, applicant has shown an entitlement to "protection" which may bring him within the reach of the statute in point of fact.

This question, however, is whether the board majority's action, in denying commutation upon the facts indicated, was "unreasonable" as an abuse of the discretion vested in the board. We conclude that it was not. If commutation of this applicant's award were to have the precedential effect which the board majority and respondents portend, it would indeed permit—if not command—commutation of any and every permanent disability award.

Although the overall financial consequences of wholesale commutations upon the workers' compensation insurance industry are not clearly perceptible in the present record, we may not dismiss them as imaginary. The widespread use of "blocked accounts," in connection with wholesale commutations, would transfer the income-producing potential of the award's principal from the insurers to the financial institutions involved. It would also add a presently incalculable, but predictable, administrative burden upon the board in its monitoring of the accounts. The full pattern of these prospects compels the conclusion that the Legislature has not had them in mind while permitting the continued use of the commutation device; and that it has not intended that the device should be employed except in the urgency situations to which the Commission and the board have limited it, upon a case-by-case basis, for more than a half century.

As indicated above, this view contemplates the precedential effect of granting commutation in the present case. We may acknowledge that such effect could be avoided by granting commutation to this applicant, because he is relatively affluent and has no present need for the periodic payments he is scheduled to receive under the uncommuted award, and by limiting the availability of commutation to this particular—and perhaps unusual—situation. The dissenting board member would have granted commutation to applicant upon this basis.

Although such isolated treatment of this applicant would not necessarily amount to actionable discrimination against other injured employees, it would permit his affluence to yield him a personal advantage in the administration of the workers' compensation law. This would be inconsistent with that aspect of the law which contemplates that it shall achieve a uniform distribution of its benefits, with its burdens, among all those whom it reaches in our industrial society. It would also be inconsistent with the constitutional foundation of the law, in which the people have provided that it is to be the result of the Legislature's "*plenary* power . . . to create, and enforce a *complete* system of workers' compensation . . . , to the end that the administration of such legislation shall accomplish *substantial justice* in all cases," as one of the several matters "expressly declared to be the social public policy of this State. . . ." (Cal. Const., art. XX, § 21 [italics added].)

Order affirmed.

Christian, J., and Emerson, J.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.